UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH ALAN WOODRING,

        Petitioner,

                              Case No. 1:09-cv-1106
v.                                 Hon. Robert J. Jonker

KENNETH T. McKEE,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Joseph Alan Woodring (petitioner), a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### I.       Background

        Petitioner entered a guilty pleas in the Muskegon County Circuit Court in file nos. 07-55669-FH ("669")and 07-55672-FH ("672"). Plea Trans. (docket no. 9). In file no. 07-55669-FH, petitioner was charged with delivering less than 50 grams of a mixture containing the controlled substance methadone, M.C.L. § 333.7401(2)(a)(iv) and a habitual offender third notice, M.C.L. § 769.11. *Id.* at pp. 5-6. This charge had a maximum penalty of 20 years imprisonment and/or a $25,000 fine, which was due to petitioner's prior felony convictions, was increased the sentence to 40 years imprisonment and/or a $50,000 fine. *Id.* at p. 8. In file no. 07-55672-FH, petitioner was charged with possession and intent to deliver 50 grams or more but less than 450 grams of a mixture containing the controlled substance methadone, M.C.L. § 333.7401(2)(a)(iii) and a habitual offender third notice, M.C.L. § 769.11. *Id.* at pp. 6-7. This charge had a maximum penalty of 20 years imprisonment and/or a fine of $250,000.00, which, due to petitioner's prior felonies, was doubled

to 40 years imprisonment and/or a fine of $500,000.00. *Id.* At the plea hearing held on December 13, 2007, petitioner pled guilty to both charges. *Id.* at p. 10.

Petitioner was sentenced on January 11, 2008. Sent. Trans. (docket no. 10). In case no. 669, petitioner was sentenced to a term of 34 months to 4 years imprisonment. *Id.* at p. 11 (docket no. 10). In case no. 672, petitioner was sentenced to term of 15 years to 40 years, to be served concurrently. *Id.*

On June 17, 2008, petitioner, through counsel, moved to set aside the plea, for a *Ginther* hearing[1], to dismiss the case and for a re-sentencing. Motions (docket no. 1-3). The trial court granted the motion for a *Ginther* hearing. Opinion and Order (July 11, 2008) (docket no. 14). In that order, the trial court rejected petitioner's request for dismissal based upon theories of double jeopardy and equal protection. *Id.* The court held the *Ginther* hearing on August 1, 2008. *Ginther* Trans. (August 1, 2008) (docket no. 12). On August 21, 2008, the court entered an order denying all of petitioner's motions. Order (Aug. 21, 2008) (docket no. 14).

Petitioner, through counsel, filed a delayed application for leave to appeal to the Michigan Court of Appeals raising four issues:

I.    Whether the statute under which [petitioner] was convicted and the statute that adds 50 OV points for over 50 grams of aggravate weight[2] of Methadone are unconstitutional because they violate the due process and equal protection guarantees of both the 14th Amendment of the United States Constitution, and the Michigan Constitution, 1963, Art. 1, section 17, because the classification, prosecution, and

---

[1] In *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 925 (1973), the Supreme Court of Michigan held that a criminal defendant should move for a new trial and seek to make a separate factual record in the trial court if the trial record does not cover the claims he wishes to raise on appeal." *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004).

[2] The court notes that petitioner's counsel sometimes refers to the "aggravate weight" of the mixture rather than the "aggregate weight" of the mixture.

increase of sentencing grid and range based upon aggravate weight of a "mixture" is unreasonable, arbitrary and capricious?

II.    Whether the guilty plea was constitutionally defective because the factual basis for the charge was not established, the plea did not include facts on all the elements of the offense charged, and the plea was not understanding, voluntary, or accurate in violation of state law and the 14th Amendment of the United States Constitution?

III.    Whether the trial court erred in denying the motion to withdraw the guilty plea because of ineffective assistance of counsel, because [petitioner] was deprived of his Sixth Amendment right to effective assistance of counsel?

IV.    Whether the trial court erred in sentencing [petitioner] to a greater amount of time using the death of Stephen Carlson against him because the death was not connected to the alleged possession of more than 50 grams of Methadone, because it was a denial of fair notice as required by the United States Constitution and a violation of Michigan law, and because the judge used an irrelevant consideration and did not give [petitioner] an opportunity to defend against it?

Delayed Appl. (docket no. 13). The Michigan Court of Appeals denied the application for lack of merit in the grounds presented. *People v. Woodring*, No. 289795 (Mich. App. Feb. 17, 2009) (docket no. 13).

Petitioner, through counsel, filed an application for leave to appeal to the Michigan Supreme Court which raised these four issues as well as additional issues of Michigan state law:

I.    Whether the statute under which [petitioner] was convicted and the statute that adds 50 OV points for over 50 grams of aggravate [*sic*] weight of Methadone are unconstitutional because they violate the due process and equal protection guarantees of both the 14th Amendment of the United States Constitution, and the Michigan Constitution, 1963, Art. 1, section 17, because the classification, prosecution, and increase of sentencing grid and range based upon aggravate weight of a "mixture" is unreasonable, arbitrary and capricious; and whether this issue involves a substantial question as to the validity of a legislative act, MCR 7.302 B (1), and/or involves

legal principles of major significance to the state's jurisprudence, MCR 7.302 B (3)?

II.      Whether the guilty plea was constitutionally defective because the factual basis for the charge was not established, the plea did not include facts on all the elements of the offense charged, and the plea was not understanding, voluntary, or accurate in violation of state law and the 14th Amendment of the United States Constitution; and whether the decision to deny leave on this issue is clearly erroneous, will cause material injustice and conflicts with prior decisions, MCR 7.302 B (5), and/or involves legal principles of major significance to the state's jurisprudence, MCR 7.302 B (3)?

III.      Whether the trial court erred in denying the motion to withdraw the guilty plea because of ineffective assistance of counsel, because [petitioner] was deprived of his Sixth Amendment right to effective assistance of counsel, and whether the decision to deny leave on this issue is clearly erroneous, will cause material injustice and conflicts with prior decisions, MCR 7.302 B (5), and/or involves legal principles of major significance to the state's jurisprudence, MCR 7.302 B (3)?

IV.      Whether the trial court erred in sentencing [petitioner] to a greater amount of time using the death of Stephen Carlson against him because the death was not connected to the alleged possession of more than 50 grams of Methadone, because it was a denial of fair notice as required by the United States Constitution and a violation of Michigan law, and because the judge used an irrelevant consideration and did not give [petitioner] an opportunity to defend against it; and whether the decision to deny leave on this issue is clearly erroneous, will cause material injustice and conflicts with prior decisions, MCR 7.302 B (5), and/or involves legal principles of major significance to the state's jurisprudence, MCR 7.302 B (3)?

Appl. (docket no. 14) (emphasis added). The Michigan Supreme Court denied the application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Woodring*, No. 138631 (Mich. Sept. 11, 2009) (docket no. 14).

Petitioner, through counsel, filed a federal habeas action in this court as to the conviction and sentence in case no. 672 (i.e., the 15 to 40 years sentence for possession with intent to deliver at least 50 grams but less than 450 grams of Methadone). Petitioner has raised four issues:

I.    Whether the statute under which the defendant was convicted and the statute that adds 50 OV points for over 50 grams of aggregate weight are unconstitutional in violation of due process and equal protection of Michigan Constitution and United States Constitution, 14th Amendment, because the classification, prosecution, and increase of sentencing grid and range based upon aggregate weight of mixture is unreasonable, arbitrary and capricious?

II.   Whether the guilty plea was constitutionally defective because the factual basis for the charge was not established, the plea did not include facts on all the elements of the offense charged, and the plea was not understanding, voluntary, or accurate in violation of state law and the 14th Amendment of the United States Constitution?

III.  Whether the trial court erred in denying the motion to withdraw the guilty plea because of ineffective assistance of counsel, because the defendant was deprived of his Sixth Amendment right to effective assistance of counsel?

IV.   Whether the trial court erred in sentencing the Defendant to a greater amount of time using the death of Stephen Carlson against him because the death was not connected to the alleged possession of more than 50 grams of Methadone, because it was a denial of fair notice as required by the United States Constitution and a violation of Michigan law, and because the judge used an irrelevant consideration and did not give the defendant an opportunity to defend against it?

Petition (docket no. 1).

## II.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and  demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*,  -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted).  "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal court may grant the writ only if the

state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III. Petitioner's guilty plea

Petitioner entered his plea on December 13, 2007. Plea Trans. (Dec. 13, 2007) (docket no. 9). In file no. 669, the government charged that on August 11, 2007, petitioner delivered less than 50 grams of a mixture containing the controlled substance methadone. *Id.* at p. 5. The charged offense was a felony punishable by up to 20 years and/or a $2,500 [sic] fine. *Id.* Petitioner was also charged with a habitual offender third notice, having previously been convicted of committing two felonies on June 7, 2004. *Id.* As a third habitual offender, petitioner was subject to a penalty of up to twice the maximum sentence on the primary offense. *Id.* at p. 6. In case no. 672, the government charged that between August 3, 2007 and August 16, 2007, petitioner possessed with intent to deliver 50 grams or more but less than 450 grams of a mixture containing the controlled substance methadone. *Id.* This is a felony punishable by up to 20 years in prison

and/or a $250,000.00 fine. *Id.* The government also issued a third habitual offender notice with this charge. *Id.* at pp. 6-7.

Petitioner testified that he heard the charges and understood the name and elements of the charges. *Id.* at pp. 7-8. The court reiterated the charges and maximum penalties, and corrected the prosecutor's statement that in case no. 669 with respect to the fine (i.e., a $25,000.00 fine rather than $2,500.00 as stated). *Id.* at p. 8. The court advised petitioner that due to the habitual offender enhancements, he was facing twice the maximum penalties, i.e., 40 years imprisonment in each case, fines of up to $50,000.00 in case no. 669 and fines up to $500,000.00 in case no. 672. *Id.* The court advised petitioner that he also faced "licence sanctions" pursuant to Michigan law and that there were no mandatory minimum sentences involved. *Id.*

The court advised petitioner of his right to plead nolo contendre, guily, not guilty or to stand mute. *Id.* at pp. 9-10. The court confirmed that petitioner understood "what it means to to or give up a constitutional right" and then took guilty pleas from petitioner as to case nos. 669 and 672. *Id.* at p. 10. Petitioner also admitted that he was convicted of the two prior felonies. *Id.* at pp. 10-11. Petitioner testified: that no one promised him anything to plead guilty; that no one threatened him to plead guilty; that it was his own free choice to resolve the charges by entering the guilty pleas; that he read and signed a form giving up a number rights; and that he had no questions about the rights he was giving up. *Id.* at pp. 11-12.

Petitioner understood that he gave up the following claims by entering his guilty plea:

> THE COURT: Your guilty pleas also give up any claim that your pleas were the results of secret promises or threats that were not disclosed here today. They give up the right to claim later that it was not your own choice to enter the plea here today. And they change your appeal rights from having the right to appeal to the Court of Appeals to having to ask for leave or for permission to appeal to the Court of Appeals. Do you understand the difference?

THE DEFENDANT:  Yes, your Honor.

*Id.* at p. 12.

Petitioner then provided a factual basis for his pleas.  With respect to case no. 668, petitioner testified that on August 11, 2007, petitioner went to Ms. Kristine Westfall's house, located in Muskegon County  with some methadone pills.  *Id.* at pp. 12-13.  Petitioner knew the pills were methadone and delivered six of them to Ms. Westfall.  *Id.* at p. 13.  Petitioner received $60.00 for the pills and gave petitioner another $60.00, for a total purchase of $120.00.  *Id.*  at p. 113-14.  With respect to case no. 672, petitioner testified that on one occasion between August 3, 2007 and August 16, 2007, in Muskegon County, petitioner possessed more than 50 grams of methadone, which he intended to deliver to another person.  *Id.* at pp. 14-15.

The Court found that petitioner's testimony established that he committed both of the crimes in Muskegon County and that petitioner's pleas were knowing, voluntary, understanding, and accurate.  *Id.* at p. 15.  Based on that record, the court accepted the pleas.  *Id.*  The  prosecutor then posed one more question to petitioner, in which plaintiff admitted that he received 50 pills from Joyce Kuna and that he intended to sell those pills.  *Id.* at pp. 15-16.

After the court accepted his plea, petitioner stated that he had no questions regarding the proceedings that day; that he understood that the court made no promises regarding his sentence; and that he had a chance to discuss the sentencing guidelines with his counsel.  *Id.* at pp. 16-17.

The test for determining the validity of a guilty plea under the federal constitution is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."   *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  *See Hart v. Marion Correctional Facility*, 927 F.2d 256, 257 (6th Cir. 1991) (to satisfy the dictates of due process, a plea

"must be a voluntary, knowing, intelligent act").  For a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence imposed. *See King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795-96 (6th Cir. 1991); *Hart*, 927 F.2d at 259.

"A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."  *United States v. Broce*, 488 U.S. 563, 569 (1989).  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973).  When a defendant pleads guilty, he "simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers," *McCarthy v. United States*, 394 U.S. 459, 466 (1969), and forecloses all subsequent non-jurisdictional appeals to his conviction,  *United States v. Bahhur*, 200 F.3d 917, 923 (6th Cir. 2000).

When an offender seeks to reopen the proceeding after entering a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Broce*, 488 U.S. at 569.  In resolving a state criminal defendant's federal habeas petition challenging the voluntariness of a guilty plea, the state generally satisfies its burden of showing a voluntary plea by producing a written transcript of the state court proceeding.  *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact.  *Id.*  A habeas

petitioner "must overcome a heavy burden" to have a federal court overturn these state court findings. *Id.* at 328.

Here petitioner was aware that he waived a number of rights by entering his guilty plea. Petitioner acknowledged that he delivered six methadone pills on one occasion in exchange for $120.00, and that he possessed more than 50 grams of methadone (50 pills) on another occasion with the intent to deliver the substance. The transcript of petitioner's guilty plea shows that the plea was voluntary and intelligent. *See Garcia*, 991 F.2d at 326.

### IV.    Petitioner's habeas claims

### A.    Petitioner was convicted under an unconstitutional statute

Petitioner contends that the statute under which he was convicted, M.C.L. § 333.7401(2)(a)(iii), and that statute under which he was sentenced, M.C.L. § 777.45, are unconstitutional. Petitioner's Brief at p. 23 (docket no. 2). As an initial matter, respondent responds that petitioner cannot collaterally attack the constitutionality of these statutes after entering a guilty plea. While petitioner argues that "[t]he right to contest the constitutionality of a statute is not waived by a guilty plea," he does not address this rather complex legal issue in any detail. Petitioner's Brief at p. 30.

> "Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir.2012) (internal quotations omitted). This is so because
>
>> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Thus, after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself. *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir.2012).

*Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012).

In *United States v. Seay*, 620 F.3d 919 (8th Cir. 2010), the court listed three Supreme Court decisions which identify the types of challenges to the court's jurisdiction which a criminal defendant could raise even if that defendant entered a valid guilty plea under *Tollett*:

> [A] person may, despite a valid guilty plea, pursue a certain type of claim that has been variously defined as a claim that attacks "the State's power to bring any indictment at all," *United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 765, 102 L.Ed.2d 927 (1989), that protects a defendant's "right not to be haled into court," *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2104, 40 L.Ed.2d 628 (1974), and that "the charge is one which the State may not constitutionally prosecute," *Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975) (per curiam). We have often interpreted these Supreme Court cases to foreclose claims that raise "nonjurisdictional" issues and to permit only claims that question the trial court's "jurisdiction."

*Seay*, 620 F.3d at 921.

Petitioner contends that his claim falls within that exception to the *Tollett* waiver rule because the criminal statutes, M.C.L. §§ 333.7401(2)(a)(iii) and 777.45, are unconstitutional as applied to methadone (i.e., unconstitutional as applied to him). Neither party has adequately addressed whether petitioner's claim amounts to a jurisdictional challenge as allowed under the *Tollett* rule. For purposes of this report, the undersigned views the constitutional claim raised by petitioner as the assertion of a jurisdictional challenge which survives a valid guilty plea. *See United States v. Slone* (court observed that "[defendant's] arguments implicate the district court's jurisdiction, since he claims that the statute does not encompass his conduct, or if it does it is unconstitutional"). In *United States v. De Vaughn*, 694 F.3d 1141 (10th Cir. 2012), the court noted

12

that the circuit courts have taken different positions on whether a criminal defendant's challenge of

an unconstitutional statute is a jurisdictional matter which falls within the exception to *Tollett* or

a non-jurisdictional matter which is barred by *Tollett*:

> Some circuits have held that both facial and as-applied constitutional challenges are non-jurisdictional. *United States v. Drew*, 200 F.3d 871, 876 (D.C.Cir.2000); *United States v. Feliciano*, 223 F.3d 102, 125 (2d Cir.2000). *See also United States v. Cardales–Luna*, 632 F.3d 731, 737–38 (1st Cir.2011) (rejecting the dissent's argument that the constitutionality of a criminal statute is jurisdictional). A number of other circuits treat facial constitutional challenges as jurisdictional, but as-applied challenges as non-jurisdictional. *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir.2011); *United States v. Phillips*, 645 F.3d 859, 862 (7th Cir.2011); *United States v. Morgan*, 230 F.3d 1067, 1071 (8th Cir.2000). The Third Circuit and Sixth Circuits have treated even as-applied constitutional challenges as jurisdictional defenses. *United States v. Slone*, 411 F.3d 643, 646, 650 (6th Cir.2005); *United States v. Whited*, 311 F.3d 259, 262, 264 (3d Cir.2002). The Ninth Circuit has said a guilty plea "does not bar appeal of claims that the applicable statute is unconstitutional." *United States v. Broncheau*, 597 F.2d 1260, 1262 n. 1 (9th Cir.1979). But that circuit has limited this class of claims to those involving "prosecutorial vindictiveness amounting to a due process violation" and "a double jeopardy claim." *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir.1989) ("We have not extended *Blackledge* and *Menna* beyond the specific claims alleged in those cases."). Finally, the Fifth Circuit's position is impossible to pin down. *Compare United States v. Burian*, 19 F.3d 188, 190 n. 2 (5th Cir.1994) ("Ordinarily, a guilty plea waives all objections, even constitutional ones, unless expressly reserved.") *with United States v. Knowles*, 29 F.3d 947, 952 (5th Cir.1994) ("[A] guilty plea does not waive the right of the defendant to challenge the constitutionality of the statute under which he is convicted.") and *United States v. Sealed Appellant*, 526 F.3d 241, 243 (5th Cir.2008) (holding that "[t]he doctrine of waiver-by-guilty plea" applied to a defendant's argument that "Congress acted *ultra vires* in enacting" the statute under which he was prosecuted).

*De Vaughn*, 649 F.3d at 1150, fn. 5.

> Assuming that petitioner's guilty plea did not bar him from bringing the present

constitutional challenge, the court concludes that his challenge fails. The criminal statute, M.C.L.

§ 333.7401, provides in pertinent part as follows:

> (1)   Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled

substance, a prescription form, or a counterfeit prescription form.  A practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.

(2) A person who violates this section as to:

(a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv) [M.C.L. § 333.7214(a)(iv)] and:
*      *      *

(iii) Which is in an amount of 50 grams or more, but less than 450 grams, of any mixture containing that substance is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $250,000.00, or both.

M.C.L. § 333.7401(a)(1) and (2)(a)(iii) (footnote omitted).  In this instance, petitioner was charged with delivering at least 50 grams, but less than 450 grams of methadone, which is a schedule 2 drug listed in M.C.L. § 333.7214(a)(iv)(b).

The sentencing guidelines statute, M.C.L. § 777.45, provides that for purposes of scoring the guidelines, Offense Variable (OV) 15, "aggravated controlled substance offenses," assigns 50 points if "[t]he offense involved the manufacture, creation, delivery, possession, or possession with intent to manufacture, create, or deliver of 50 or more grams but less than 450 grams of any mixture containing a controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv)."  M.C.L. § 777.45(1)(c).

According to petitioner,

The issue is whether this statute, MCL 333.7401(a)(iii) is unconstitutional in a prosecution for Methadone based upon the prosecution's claim that the weight of the drug is that of the "mixture," rather than the pure weight of the Methadone.  This is referred to as "aggregate weight."  "Pure weight" is the actual weight of the active ingredient.

14

If MCL 333.7301 is unconstitutional as applied to Methadone, so also is MCL 777.45 because MCL 777.45 increases the punishment for possession of over 50 grams through the use of aggregate weight, by adding 50 points in offense variable 15. (Attached , appendix B)

By these statutes, the legislature greatly increases the punishment for possession of over 50 grams through the use of aggregate weight. Through the use of this arbitrary and unconstitutional classification, defendants in Methadone cases are severely adversely affected.

Methadone is a prescription drug. A wafer weighs 6.88 grams according to a trial brief filed by the prosecutor in this case. Each wafer contains four doses. The pure weight of a wafer is 40 milligrams. 50 wafers, therefore, contain only 2 grams of Methadone; the aggregate weight of 50 wafers is 344 grams. Methadone does not come in a mixture. Methadone is not cut as is heroine or cocaine.

Petitioner's Brief at pp. 23-24.

Petitioner further contends that

The unfairness is illustrated starkly by the observation that one wafer (only 40 mm [sic]) is punished the same as 6.88 grams of cocaine or heroin. A Defendant possessing of [sic] 50 pills (2 grams) would be punished the same as a defendant who took 2 grams of cocaine and cut it into 344 grams, and that much cocaine dilution is probably not possible.

*Id.* at p. 26.

The state trial court addressed petitioner's claim as follows:

Equal Protection. Defendant argues that the punishment of methadone offenders violates the equal protection guarantees of both the Michigan and US Constitutions. This claim was rejected by the Michigan courts in *People v Porterfield*, 128 Mich App 35, 37; 339 NW2d 683 (1983).

Opinion and Order granting motion for *Ginther* hearing (July 11, 2008) (docket no. 14).

The Fourteenth Amendment provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. XIV, § 1. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms

of a statute or by its improper execution through duly constituted agents." *Warren v. City of Athens Ohio*, 411 F.3d 697, 710 (6th Cir. 2005), quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (internal quotation marks and citation omitted). Here, petitioner is apparently raising a so-called "class of one" claim under the Fourteenth Amendment. "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren*, 411 F.3d at 710, citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "To state an equal protection claim, a party must claim that the government treated similarly situated persons differently." *Braun v. Ann Arbor Charter Township*, 519 F.3d 564, 574 (6th Cir. 2008). The court applies a rational-basis review to legislative distinctions which, like the present case, do not involve "a suspect classification based on race or other forbidden grounds." *United States v. Mason*, 410 Fed. Appx. 881, 890 (6th Cir. 2010), quoting *United States v. Dunham*, 295 F.3d 605, 610 (6th Cir.2002). "A classification subject to rational-basis review violates equal protection if it is not rationally related to a legitimate government purpose." *Id.*

Petitioner's claim appears to be that, as to methadone, the Michigan statutes punish criminal defendants (like him) and increase sentencing guideline points for such defendants based upon a "mixture" containing methadone rather than the "pure weight" of the methadone. Petitioner's Brief at p. 23. This premise regarding methadone is incorrect. Under the Michigan statutes at issue, *all* schedule 2 controlled substances are punished and sentenced based upon mixture containing the substance rather than the pure weight of the substance. *See* M.C.L. §§ 333.7401(2)(a)(iii) and 777.45(1)(c).

The Michigan appellate courts addressed this type of equal protection argument more than 30 years ago. In *People v. Lemble*, 103 Mich. App. 220, 222, 303 N.W.2d 191 (1981), the Michigan Court of Appeals rejected an equal protection argument with respect to the controlled substance possession statute, M.C.L. § 333.7403, which, like the controlled substance manufacture/delivery statute, M.C.L. § 333. 7401, established the penalties for statutory violations by the amount of "any mixture containing that substance." In *Lemble*, the court held:

> Nor was this defendant denied equal protection of the laws. It is reasonable for the Legislature to impose more severe punishment for those possessing greater amounts of a mixture containing a controlled substance due to the potential for wider dissemination with an increased potential harm to society. The wording of M.C.L. s 333.7403; M.S.A. s 14.15(7403), indicates to this Court that the Legislature intended to punish defendants more severely for possession of greater amounts of "any mixture" containing a controlled substance with the recognition that purchasers of such mixtures often have little or no idea of what percentage of the mixture is filler and what percent is the "pure" drug. The greater the quantity of the mixture, regardless of the degree of purity, the greater the potential harm to society. Therefore, the different treatment for persons in different situations under the code is proper because it is based on the object of the legislation, deterrence of the distribution of the drug. *People v. Chapman*, 301 Mich. 584; 4 N.W.2d 18 (1942).

*Lemble*, 103 Mich. App. at 222-23. As noted by the state trial court, by 1983 the Michigan Courts had settled the equal protection issue. *See Porterfield*, 128 Mich. App. at 37 (rejecting the defendant's challenge to a conviction under M.C.L. § 333.7401(2)(a)(iii) "that he was denied equal protection of the law because the statutory scheme punishes weight and not purity of the controlled substance mixture").

In *People v. Prediger*, 110 Mich.App. 757, 760, 313 N.W.2d 103 (1981)[3], the Michigan Court of Appeals held that "a plain reading of [M.C.L. § 333.7401(2)(a)] establishes that

---

[3] The court notes that this opinion (which involved cases consolidated on appeal) appears in the Westlaw database *sub nom People v. Stahl*, 110 Mich. App. 757, 760, 313 N.W.2d 103 (1981).

the weight classifications refer to the aggregate weight of a mixture containing a controlled substance and not solely to the weight of the pure controlled substance."

The court views petitioner's equal protection challenge as simply a variation of the "mixture weight vs. pure weight" argument raised in previous state cases. As the court pointed out in *Lemble*, the object of Michigan's statutory scheme is to deter distribution of controlled substances such as methadone. Given this legitimate government interest, the State of Michigan has a rational basis to punish defendants more severely for possession of greater amounts of a "mixture" containing a controlled substance, regardless of the purity of that mixture. Petitioner states in his brief that each 6.88 gram methadone tablet (wafer) contains a mixture of 40 mg of methadone and approximately 6.84 grams of other material. Petitioner appears to argue that with methadone (as opposed to, for example, cocaine) the amount of the controlled substance is the amount of "pure" substance rather than the amount of the "mixture" containing the substance. The court rejects this argument for the same reasons as set forth by the court in *Lemble*. In this regard, the court agrees with the statement in *Lemble* that "[t]he greater the quantity of the mixture, regardless of the degree of purity, the greater the potential harm to society." Furthermore, the fact that a person could construct a more concentrated (or less concentrated) mixture of another schedule 2 controlled substance in a 6.88 gram mixture does not detract from the danger presented by the methadone mixture at issue in petitioner's case. Accordingly, assuming that petitioner's equal protection claim survived his guilty plea, this claim should be denied (Issue I).

### B.    There was no factual basis to support petitioner's plea

Petitioner contends that he should be allowed to withdraw his guilty plea because the plea lacked a factual basis. Petitioner's claim is not cognizable on federal habeas review. A state

court is not required under the Federal Constitution to establish a factual basis for a guilty plea. "The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). "[S]o long as a defendant voluntarily, knowingly, and understandingly consents to be sentenced on a charge . . . there is no constitutional requirement that a trial judge inquire into the factual basis of a plea." *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir.1975). *See also, Bonior v. Conerly*, 416 Fed.Appx. 475, 478 (6th Cir. 2010) (observing that to the extent the habeas petitioner claimed that there was an insufficient factual basis for his plea, that claim was not cognizable in federal habeas; rather, such a claim should be raised in the state appellate proceeding). Petitioner's claim should be denied as to Issue II.

### C. Ineffective assistance of counsel with respect to the motion to withdraw the plea.

Petitioner contends that his guilty plea should be withdrawn due to the ineffective assistance of trial counsel. Petitioner's counsel in this matter, Mr. Balgooyen, assumed the representation in petitioner's case on or about November 29, 2007, two weeks before petitioner pled guilty. In support of his claim, petitioner contends that Mr. Balgooyen was not prepared for him to plead guilty for a number of reasons: there was no laboratory report to support the prosecution's claim that petitioner had between 50 and 450 grams of a mixture containing methadone; petitioner did not receive a copy of the police report from counsel; petitioner had a "medical history" but counsel did not procure copies of his medical records; that on the morning of the plea, counsel observed that petitioner wanted to get out of the jail and on with his life; that petitioner had a prescription for methadone but had not received any while in jail for five months; that counsel told petitioner not to plead guilty because he (Mr. Balgooyen)"hadn't had enough time to look into all

the issues;" that counsel did not make a formal request for discovery; that the prosecutor never gave counsel a specific date when petitioner possessed the larger quantity of methadone; that counsel did not complete his investigation; that counsel did not discuss defending the case based upon the weight of the methadone; and that counsel "should never have allowed [petitioner] to plead on the day the Judge refused to make a *Cobbs*[4] commitment." Petitioner's Brief at pp. 48–51.

The trial court addressed this motion at the *Ginther* hearing in pertinent part as follows:

> For a claim of ineffective assistance of counsel arising from a plea the Court's primary question is whether his plea was voluntary and understanding. <u>In re: Oakland County Prosecutor</u>, 191 Michigan Appeal 113-120. "The defendant must overcome a strong presumption that counsel provided effective assistance and that counsel's decisions were the result of sound trial strategy. The question is not whether our court would in retrospect consider counsel's advice to be right or wrong but whether the advice was within the range of competence demanded of attorneys in criminal cases." There is some dispute between what Mr. Balgooyen said he did and what Mr. Woodring says he did. I tend to believe Mr. Balgooyen where there are disputes for a couple of reasons. One is Joe [petitioner] has admitted quite candidly today that his primary consideration is the length of the sentence imposed. I don't blame him for that. I wouldn't be happy with that either. But that colors everything else. That's the reason we're here. He's trying for a better deal and I think he's trying to fit some of the facts around that goal.

> The other thing I found troubling was when Joe said a minute ago that he told Mr. Balgooyen something about well I ought to do 78 months because I don't have a record. Well when I – the presentence investigation report here that I used when I sentenced him on this file back in January said that he had 2 felonies and 17 misdemeanors. Now I understand that in the community some people slough off some of the misdemeanors, suspended operator's license and restricted license as not being really crimes. But in my view 2 felonies and 17 misdemeanors is a slight shading of the truth. Some of those involve some elements of dishonesty and although the Rules of Evidence don't apply Michigan Rule of Evidence 609 ["Impeachment by evidence of conviction of crime"] has some rules they don't apply

---

[4] This is a reference to *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), in which the Michigan Supreme Court held that where a judge preliminarily agrees to a particular sentence as the basis for a defendant's entry of a plea, the defendant must be given an opportunity to withdraw his plea if the subsequent sentence exceeds the preliminary evaluation.

[sic] and I think I can delve into those a little bit. What enhanced Mr. Balgooyen's credibility with me is – is the things he admitted that were against his interest. In other words if he was a liar he wouldn't admit that he'd never read <u>People v Cobbs</u> even though he seeks <u>Cobbs</u> commitments all the time. He would not admit that he did not explain the corpus delicti rule. He wouldn't admit that he didn't have a time sheet. He wouldn't admit to the absence of the lab report. So that makes me believe him when he talks about some of these other things. And so analyzed that way he met with Mr. Bader [the prosecutor] immediately. He got the reports. He talked to his client, he says three of four times in jail. We could have got the jail log probably to help with that, but we didn't. He met with him other times when he was in court. He said Mr. Woodring was in a hurry and wanted to get it done and that opinion by Mr. Balgooyen, that testimony is supported by the plea transcript where Joe says let's get it done. Mr. Balgooyen says he watched the video [of petitioner's confession]. He admitted that he didn't get some of his work done because Joe wanted to wrap it up sooner than that. And so the medical records he didn't get them and he didn't file that suppression motion.

I will say this. Mr. Balgooyen has been practicing law for a long time. Sometimes when lawyers practice law for a long time they get tired and broken down. Some of us have days probably where we're tired and broken down, but Mr. Balgooyen litigated this case for Mr. Woodring with passion. He was insistent at the <u>Cobbs</u> time and at the time of the sentence he cared about his client I could tell. He put himself into it. He advocated as well as he could. And some of those decisions about how to approach the Judge are left for him to decide. He's the lawyer; he's got to make these decisions. I was struck by Ms. Burgoyne's [appellate counsel's] questioning of him about well why didn't you say this during elocution or say this. And I've known him for 20 years. He knows what works and what doesn't work. And he has the right to fashion that elocution in a way that makes it more effective. Frankly when attorneys go too far off on arguing things that really don't have much merit they start to lose their credibility with me. So Mr. Woodring is entitled to, by the Constitution, the effective assistance of counsel. I think he received same.

*Ginther* Hear. Trans. at pp. 134-37. The judge also noted that at the conclusion of the plea, petitioner asked the court to accelerate the his sentence date. *Id.* at p. 132. The state court judge observed that petitioner's request for an early sentencing date "buttresses Mr. Balgooyen's testimony that it was Mr. Woodring who wanted to get this concluded as quickly as he could." *Id.* Significantly, petitioner's counsel testified at length about his preparations, including watching the video of petitioner's confession, reviewing the 160 page police report, and discussions of trial strategy, including

counsel's recommendation not to plead guilty. *See Ginther* Hear. Trans. at pp. 37-48. However, petitioner insisted on pleading guilty. *Id.* at pp. 37, 43, 45.

When a guilty plea is challenged on the basis of ineffective assistance of trial counsel, the court applies the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hill*, 474 U.S. at 58. Under the *Strickland* test: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. In the context of a guilty plea, the court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415-16 (6th Cir. 2008), quoting *Hill*, 474 U.S. at 58-59. To prevail on the prejudice requirement, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo v. Moore*, -- U.S. --, 131 S.Ct. 733, 743 (2011) (internal quotation marks omitted). The reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

Where a state criminal defendant has pled guilty, the court should closely scrutinize a subsequent federal habeas claim that the guilty plea was invalid due to the alleged ineffective assistance of trial counsel. As the court observed in *Premo*:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. . . .
>
> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance

that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture," *Richter*, --- U.S., at ----, 131 S.Ct. 770. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo*, 131 S. Ct. at 741-42.

The gist of petitioner's claim is that his counsel had represented him for only two weeks, was not prepared, and should not have allowed him to plead guilty. Ironically, petitioner's counsel recommended he not plead guilty and petitioner ignored his advice. Petitioner now attempts to blame another for his own mistake. Of course, the final decision lay with the petitioner. Assuming, for purposes of this report, that petitioner's counsel was deficient for one or more of the reasons asserted by petitioner, petitioner's claim fails because he was not prejudiced by counsel's actions. Petitioner presents no argument or evidence to support the prejudice prong of the *Strickland* analysis, i.e., "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo*, 131 S.Ct. at 743 (internal quotation marks omitted). Petitioner addresses the prejudice prong by stating that "[t]he deficiency prejudiced [him]" and that "[p]articularly because the prosecution had no physical evidence, it is highly likely that

[petitioner] would have been found not guilty." Petitioner's Brief at p. 51. Petitioner's conclusory assertion is insufficient to demonstrate prejudice. "A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim." *Garrison v. Elo*, 156 F.Supp.2d 815, 829 (E.D. Mich. 2001). Rather the petitioner "must show that there is a reasonable probability that the result of the proceeding would have been different." *Id.* (emphasis in original). The record at the *Ginther* hearing is not sufficient to show a likely probability that petitioner would have been found not guilty. Neither petitioner nor the prosecutor used the hearing to explore the types and weight of evidence that the prosecutor intended to present against petitioner.

     Petitioner has presented no evidence that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. At the *Ginther* hearing, petitioner was most concerned about his sentence, testifying that his counsel thought there was a good chance he could get only 78 months and that he would have never have pled guilty if he knew he would receive a 15 year sentence. *See Ginther* Hear. Trans. at pp. 87-88 ("if I knowed I'd get 15 years I woulda never plead guilty"). In essence, petitioner's claim is that had counsel taken other action, he would have been able to plead guilty for a lower sentence of perhaps 78 months. In this regard, the state court observed at the *Ginther* hearing that petitioner "has admitted quite candidly today that his primary consideration is the length of the sentence imposed." *Ginther* Trans. at p. 134. Where a defendant asserts that a better plea negotiation would have allowed counsel to advocate for a lower sentence, such an assertion does not establish prejudice, because "it is relevant only to sentencing and not to whether [the defendant] would have pled guilty." *United States v. Garofolo*,

425 Fed. Appx. 460, 462 (6th Cir. 2011). Based on this record, petitioner has not shown that he was prejudiced by counsel's alleged errors.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner's claim for relief should be denied as to Issue III.

### D. Petitioner's sentence was unconstitutional

Petitioner contends that the state trial judge improperly considered matters outside of the record in his sentence, specifically by considering the death of Stephen Carlson, a drug overdose victim. Petitioner contends that his due process rights were violated, because he was not given "fair notice" that the trial judge would consider Stephen Carlson's death at his sentencing.

At the sentencing hearing, the prosecutor noted that petitioner committed the offense of delivery of methadone, "[a]nd by that delivery of methadone, he was a participant in the death of Steven Carlson." Sent. Trans. at p. 8. The prosecutor elaborated:

> Now the court knows, because the court has had the opportunity to look at the medical examiner's report, that it wasn't methadone alone that killed Steven Carlson. It was his consumption of alcohol and his consumption of a third drug. It was a poly drug and alcohol death of a 17 year old. Mr. Woodring didn't deliver directly to that 17 year old. He delivered to Christine Westfall, who delivered to another person, who delivered to another person, who delivered to that 17 year old.

> But while Mr. Woodring stands before the court today, he is the big dealer and a participant in what resulted in a death.

> The People's position is that in light of the fact that these offenses represent his 21st criminal conviction; in light of the fact that they are his 3rd and 4th felony convictions, and he has 17 misdemeanors; in light of the fact that he was on felony probation to you at the time he possessed with intent to deliver over 50 grams of

methadone and at the time he delivered methadone, this is the top of the guidelines case, 217 months.

Now the defendant can say, and did through his attorney, I was addicted and I made bad choices. But the court knows and the People know that one of the reasons we had him on felony probation was to offer him the services and the treatment to get straight, and he made the choices to go back into the drug world so he could support his habit, but also to make money. As the court knows from reviewing the pre, he was making big bucks and had money on him at the time of his arrest. So I did this just because I was addicted doesn't fly. He was in it for the money too.

*Id.* at pp. 8-9.

Before issuing petitioner's sentence, the trial judge made the following observations:

Now let me say this, you and I have been working on your files now for a couple of years. And I find this to be a difficult case, because at some fundamental level I like you, I think you need help, I think probably you missed out on a little bit of guidance that might have helped out early on.

But at this point, you have dug yourself a real deep hole. You've been on probation to me now for about 3 years. Since you've been on probation, you've committed numerous criminal behaviors. I think you probably are an addict. But in this case, you are abusing medicine that was given to you to help you with your physical problems. And you're making pretty good money doing it.

The attorneys have excellently handled the issues here. I endorse the way they have handled the guidelines. But I cannot ignore the fact that in some way you had a role in a chain of events that did, in the end, end up with a young man being dead. And this is the risk I think of just about every drug dealer, that somewhere downstream somebody is going to have his life permanently wrecked by the poison that you injected into the world of addiction. And I think it deserves a substantial prison sentence, and that will be imposed.

*Id.* at pp. 10- 11.

The trial judge addressed these issues again during the *Ginther* hearing:

Ms. Burgoyne [petitioner's counsel] talks a lot about failing to inform [petitioner] that the Court was taking the death into account. Well, the Court's not obligated to say to the defendant I'm considering these things in sentencing you: how much you drink and how far you went in school and how you treat your wife and how you treat your mother and whether you skipped class last year, and the Court

considers all of those things.  Now Ms. Burgoyne cites a US Supreme Court case, <u>Langford v. Ohio</u> a 1991 case and she relies on it.[5]  But <u>Langford</u> is different. <u>Langford</u> was a case where the prosecutor was not even seeking the death penalty and the judge imposed it on the defendant.  So the <u>Langford</u> case related to the Court's sentencing options, not the various factors the Court needs to analyze.  The best analogy I can think of would be if the prosecutor said this is an armed robbery and there's a two-year mandatory minimum if there's an assault involved.  The prosecutor says we aren't going to claim that the defendant the assault [sic] and so if I said guess what, I read the report and I think he did the assault so I'm giving him two years extra even though the prosecutor didn't approve of it. That would be different.  That's not what we have here.

And I understood all this.  Like I said I was frankly one of the people who said from the beginning that OV3 shouldn't be scored.[6]  And here's what I said at sentencing. "But I cannot ignore the fact that in some way you had a role in a chain of events that did, in the end[,] end up with a young man being dead.  And this is the risk I think of just about every drug dealer, that somewhere downstream somebody is going to have his life permanently wrecked by the poison that you injected into the world of addiction."  So that's what I said.  I think Mr. Balgooyen [petitioner's trial counsel] and [petitioner] knew about Stephen Carlson's death.  I don't think Mr. Balgooyen shirked his duty at all by not telling him [petitioner] something.  For one thing, he [Balgooyen] can't be expected to know what's in my head when I make all these sentencing decisions.

*Ginther* Hear. Trans. at pp. 140-41.

"It is undisputed that convicted defendants, including those who plead guilty, have

a due process right to a fair sentencing procedure."  *United States v. Anders*,  899 F.2d 570, 575 (6th

Cir. 1990).  Here, however, petitioner's contention fails to state a federal constitutional issue.  The

fact that the judge noted Stephen Carlson's death at sentencing did not result in a due process

---

[5] The trial court was actually referring to *Lankford v. Idaho*, 500 U.S. 110 (1991), a case which petitioner has cited in his brief.

[6] The court notes that "OV 3" involves "physical injury to a victim."  M.C.L. § 777.33(1).  Under this OV, the sentencing guidelines are increased depending on the injury suffered by the victim (e.g., if the victim was killed, suffered a life threatening or permanent incapacitating injury, required medical treatment, etc.). *Id.* at § 777.33(1)(a)-(f).

violation. The parties were well aware of the application of OV3 prior to sentencing, as evidenced by the prosecutor's statement of this preliminary matter to the court:

> Mr. Balgooyen has brought up a guideline issue. It is one we discussed before the plea in this matter, and it's one we discussed with the court, and that is offense variable number 3.
>
> The probation department didn't have the benefit of the medical examiner's opinion when they scored that particular offense. Mr. Balgooyen, and I, and the court did, prior to the plea. The People's position and I believe the defense position is that offense variable number 3 scores 0 points in both offenses.

Sent. Trans. at p. 4. At that time, counsel and the judge agreed that after reducing OV 3 to "0" the guidelines range would be 87 to 217 months (7.25 years to 18.08 years). As discussed, the trial court sentenced petitioner to a minimum term of 15 years, a sentence which fell more than three years below the maximum minimum sentence as calculated by the guidelines. The record reflects that the parties and the judge were well aware of the possibility that Stephen Carlson's death could be connected to petitioner and the judge agreed to remove his death from the guidelines calculation. Given this record, in which the trial court did not include Stephen Carlson as a victim of the crime, but rather considered the boy's death as but one illustration of the type of tragedy which results from drug dealing and drug addiction, the court finds no due process violation.

The state's computation of petitioner's prison term involves a matter of state law that is not cognizable on federal habeas review. *See Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.' " *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir.2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)). *See also Howard v. White*, 76 Fed.Appx. 52, 53 (6th Cir. 2003) ("[a] state court's alleged misinterpretation of state sentencing

guidelines and crediting statutes is a matter of state concern only"); *Austin,* 213 F.3d at 300 (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is issue of state law not cognizable in federal habeas review); *Braun v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("federal courts can not review a state's alleged failure to adhere to its own sentencing procedures").

Petitioner's characterization of the state trial court's application of the sentencing guidelines as a denial of due process does not transform his state law claim into a federal constitutional claim. *See, e.g., Austin*, 213 F.3d at 301 (in rejecting petitioner's claim that the trial court's departure from the sentencing guidelines violated his federal due process rights during sentencing, the court noted that petitioner failed "to articulate the grounds upon which the trial court's departure from the Michigan Sentencing guidelines violates any federal due process right he possesses," and was "unable to substantiate a single violation of any of his constitutional guarantees to due process"); *Felicetty v. Bianco*, No. Civ. A. 02-585-JJF, 2003 WL 21402544 at *6 (D. Del. June 10, 2003) (observing that a state court's sentencing decision is generally not constitutionally cognizable, even if the claim is couched in terms of a due process violation). Petitioner is not entitled to federal habeas relief as to Issue IV.

## IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: February 19, 2013                          /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).